**In re Sebastian J. ARCHANGELI, Debtor.**

**ANDROSCOGGIN SAVINGS BANK, Plaintiff,**

v.

**Sebastian J. ARCHANGELI, Defendant.**

Bankruptcy No. 179–10075.

Adv. 180–0004.

United States Bankruptcy Court, D. Maine.

Aug. 8, 1980.

See also, Bkrtcy., 6 B.R. 50.

Anita M. V. Frier, Rockland, Me., for debtor.

John B. Cole, Skelton, Taintor & Abbott, P. A., Lewiston, Me., for plaintiff.

## MEMORANDUM DECISION

CONRAD K. CYR, Bankruptcy Judge.

The Androscoggin Savings Bank seeks a determination that certain debts are nondischargeable under Bankruptcy Code § 523(a)(2).

Between November 18, 1977 and August 27, 1979, three loans were granted to the defendant–debtor by the plaintiff. The first loan was made following the presentation of a loan application indicating that the debtor was employed by Bicknell Manufacturing Company, with a weekly net income of $285.00, and that he had other weekly income of $220.00 from Unalloy Steel Corporation. The application further states that the debtor had certain assets, including a 1977 Plymouth Volare valued at $5,000.00, out-of-state real estate worth $17,500.00 and life insurance having a cash surrender value of $12,000.00. The listed liabilities were $3,000.00 to Camden National Bank and a real estate mortgage of the Heritage Savings Bank in the amount of $32,500.00. Based on the information contained in the loan application and a credit check, the plaintiff loaned the debtor $4,905.00. At

the date of bankruptcy the unpaid balance was $2,146.14, plus interest.

A second loan was made on August 17, 1978 following the submission of another loan application bearing essentially the same information as the earlier application, except that Unalloy Steel Corporation does not appear as a source of income, the Plymouth Volare was reduced in value and the $3,000.00 debt to Camden National Bank was not listed. The second loan was granted in the amount of $2,000.00 on the basis of the loan application, past experience with the debtor, and the debtor's credit rating.

The third loan[1] was granted on August 27, 1979 for the purpose of satisfying the balance due on the second note and to finance the purchase of a wood stove. The third loan application contained essentially the same information as appeared on the two previous applications, with the exception that Unalloy Steel Corporation was again listed as the source of an additional income of $953.00 per month, no value was attributed to the 1977 Plymouth Volare, and the values assigned to the debtor's residence and out–of–state real estate were slightly increased. At bankruptcy, the balance due on the third loan was $2,000.00, plus interest.

Each of the loan applications was signed by the debtor. The first loan application was largely completed in the handwriting of the debtor. The debtor testified that the second and third loan applications were signed in blank, an assertion which was categorically denied by the plaintiff's loan officer, who testified that the debtor signed the applications after the loan officer had completed each entry on the applications in the presence of, and after detailed consultation with, the debtor. The court finds that each loan application was either made or published by the debtor in order to reflect the debtor's financial condition in a favorable light, as a means of inducing the plaintiff to grant the loans.

1. The testimony indicates that an oral loan application was rejected by the plaintiff in October of 1978.

The debtor admitted giving plaintiff a personal financial statement, which, though unsigned, was given in response to a direct request by the plaintiff's loan officer, after the second loan, in connection with a loan request which was refused in October of 1978. The financial statement was written entirely in the debtor's own handwriting and was relied upon by the plaintiff in making the third loan. While the debtor states that he just happened to have this financial statement in his possession when he was asked for one by the loan officer, he at no time explained or suggested to the loan officer that there was anything tentative or mistaken about it. He submitted the financial statement with the knowledge and intent that the loan officer would rely upon it. There is no requirement that a statement in writing concerning the debtor's financial condition be signed, under Bankruptcy Code § 523(a)(2)(B), only that the debtor cause it to be made or published, with intent to deceive. Bankruptcy Code § 523(a)(2)(B)(iv).

The financial statement substantially inflated the defendant's yearly income, by including Harper Tool Company as a source of $15,500.00 per year and Consolazio Tool Company as a source of $6,000.00 per year. In fact, the debtor had received $800.00 in 1977 and approximately $7,000.00 in 1978 from Harper Tool Company. He actually realized no income from Consolazio Tool Company, at any time. The financial statement listed a 1978 Grady White boat and motor as an asset having a present value of $9,500.00, but failed to show that the property was mortgaged to Damariscotta Savings Bank.

Each of the written statements used and published by the debtor in his dealings with the plaintiff contained materially false information respecting important matters affecting the debtor's financial condition, matters upon which a prudent lender would and, in this instance, did, reasonably rely. The only real question is whether the debt-

**50**

or intended to deceive the plaintiff by his use of these false statements.

The first and third loan applications state that the debtor was employed by Unalloy Steel Corporation making approximately $11,000.00 per year, when in fact as a commission salesman for Unalloy the debtor earned nothing whatever in either 1977 or 1979 and earned a mere $200.00 in 1978.

While the debtor suggests that his commission sales relationships with Unalloy Steel Company, Harper Tool Company and Consolazio Tool Company offered some potential for realizing the relatively large sums of money attributed to these sources in the various applications and the financial statement, at the time the debtor published the statements he had no such income, nor does the history of his relationship with any of these concerns warrant the cavalier optimism these statements reflect.

The listing of the 1977 Plymouth Volare as an asset, notwithstanding the fact that it was owned by Bicknell Manufacturing Company, the debtor's employer, was an especially egregious misrepresentation. The debtor's later oral representation to the loan officer that the 1977 Plymouth Volare belonged to the debtor's wife and therefore could not be used as collateral to secure the third loan demonstrates an unmistakable intent to deceive the plaintiff.

The failure to disclose a substantial mortgage balance due on the out-of-state real estate, coupled with the fact that the property had been sold by the debtor some eight months before the third loan application was submitted, further demonstrates a readily discernible pattern of omissions, exaggerations, deceptions, and misrepresentations contaminating all three loan transactions.

The defendant contends that the bank treated the written documents lightly in its determination of credit worthiness. It is suggested that reduced weight was given to the loan applications because the loan officer knew that the amounts disclosed on the written applications were estimates and projections of anticipated income, that any inaccuracies were the result of incomplete questioning by the loan officer or misunderstandings on the part of the defendant, and that the bank was willing to lend to the debtor because of his prior record with the bank, the debtor's credit rating, and the relationship which had developed between the loan officer and the defendant. But while the evidence would support a finding that the loans were extended in part by reason of the debtor's credit rating and past record with the bank, the ultimate judgment as to whether the debtor could afford to borrow more money, without undue risk to the bank, was primarily based on an informed projection as to future income, as well as net worth. The false statements submitted by the debtor precipitated a misinformed judgment on the part of the plaintiff. The responsibility for the misinformation upon which the plaintiff's judgment was made rests with the debtor.

The court concludes that the plaintiff reasonably relied upon the materially false statements contained in the documents submitted by the debtor with intent to deceive the plaintiff.

Accordingly, the debt due Androscoggin Savings Bank as a result of the combined unpaid balances on these loans, totalling $4,618.18, is held to be nondischargeable under Bankruptcy Code § 523(a)(2)(B). Judgment to enter forthwith, with interest.